UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

IN RE:  TANNER CONSTRUCTION GROUP, LLC,          Case No.: 23-10112-KKS
                                                                              Chapter 11, Subchapter V
                    Debtor.

_____/

## ORDER CONFIRMING SECOND AMENDED SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION (ECF #187)

THIS CASE came before the Court for hearing on January 24, 2024 to consider confirmation of the Debtor's *Second Amended Subchapter V Chapter 11 Plan of Reorganization* (ECF #187, the "Plan").  In attendance at the hearing was the attorney for the Debtor, the Debtor's representative Christopher Tanner, the attorney for the U.S. Trustee's Office, the subchapter V Trustee and the attorney for creditors Lukas and Lana Pidgeon.  No party objected to confirmation of the Plan.  At the Debtor's request, the *Confirmation Affidavit in Support of Debtor's Second Amended Subchapter V Plan of Reorganization* (ECF #208, the "Confirmation Affidavit") executed by Christopher Tanner, the Debtor's managing member, and the *Amended Ballot Tabulation* (ECF #207, the "Ballot Tabulation") were admitted into evidence.  The Ballot Tabulation shows that all classes of creditors have accepted the Plan.  Considering the Confirmation Affidavit and being otherwise advised in the premises, the Court finds that the Plan satisfies all requirements of 11 U.S.C. §§1129(a) and 1191(a) and that the Plan can be confirmed as a consensual plan.  It is accordingly

ORDERED:

1.  The Plan (ECF #187) is confirmed as a consensual plan pursuant to §1191(a).  A copy of the Plan is attached hereto.  A summary of Plan payments to all creditors is

attached as "Exhibit 1."

2.   As announced by the Debtor's attorney in open court, Lukas and Lana Pidgeon hold an administrative claim in the amount of $9,000.00.  This claim shall be paid in two installments of $4,500.00 each.  The first installment shall be due on February 1, 2024, and the second installment shall be due on March 1, 2024.  The Debtor shall indemnify and hold the Pidgeons harmless should there be any unpaid subcontractors or suppliers who make a claim arising from work performed pursuant to the contract between the Debtor and the Pidgeons.  These terms are hereby incorporated into the Plan.

3.   The Debtor shall pay all Subchapter V Trustee fees assessed pursuant to 11 U.S.C. §§503(b) and 1191(e).  The Subchapter V Trustee and other professionals shall have 14 days from the date of entry of this Order to file final fee applications and/or supplement prior applications for compensation. Once approved, such fees shall be due and payable pursuant to the Plan and this Order. The service of the Subchapter V Trustee in the case shall terminate when the Plan has been substantially consummated pursuant to §1183 except that the United States Trustee may reappoint a trustee as needed for performance of duties under §§1183(b)(3)(C) and 1185(a).

4.   The Debtor shall serve as the disbursing agent for the payments required to be made to creditors and interested parties under the Plan.

5.   The provisions of the Plan are binding upon the Debtor and all creditors pursuant to §1141(a).

6.   The Effective Date of the Plan is fourteen (14) days after the entry of this Order.  All property of the estate shall vest in the Debtor on the Effective Date of the Plan.

7.   The Debtor shall comply with the guidelines set forth by the Office of the United States Trustee until the closing of this case by the entry of a final decree by the Court.

8. This Plan is confirmed under §1191(a) and, therefore, the Debtor will be discharged from any debt that arose before confirmation of this Plan to the extent specified in §1141(d)(1)(A) of the Code on the Effective Date of the Plan.  The Debtor will not be discharged from any debt imposed by this Plan.

9.   The Debtor shall file a certificate of substantial consummation when the Plan has been substantially consummated. Further, the Debtor will promptly move for a final decree upon substantial consummation.

10.   The failure to reference or address all or part of any particular provision of the Plan herein has no effect on the validity, binding effect, or enforceability of such provision and such provision has the same validity, binding effect, and enforceability as every other provision of the Plan.  To the extent that any inconsistencies exist between the terms of the Plan and this order confirming plan, the terms of this order confirming plan shall control.

DONE AND ORDERED on: January 26, 2024

KAREN K. SPECIE
Chief United States Bankruptcy Judge


This order prepared by
Lisa C. Cohen

Attorney, Lisa C. Cohen, is directed to serve a copy of this order on interested parties and file a certificate of service within 3 business days of entry of the order.

# Exhibit 1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

IN RE: TANNER CONSTRUCTION GROUP, LLC,

Debtor.

_____/

Case No.: 1:23-10112-KKS
Chapter 11, Subchapter V

Dated: November 3, 2023

## SECOND AMENDED SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION

Tanner Construction Group, LLC, (the "Debtor"), proposes the following Second Amended Plan of Reorganization (the "Plan") pursuant to subchapter V chapter 11, title 11 of the United States Bankruptcy Code. The following information is provided pursuant to the requirements of §1190 of subchapter V of Chapter 11 of the Bankruptcy Code. The actual terms for repayment are found in the **Articles of the Plan** which begin at page 3.

## BRIEF HISTORY OF DEBTOR

The Debtor performs construction work on residential and commercial jobs, including new residential construction, renovations, structural repairs, additions and electrical contracting. The Debtor currently has 105 active construction projects. The Debtor's managing member, Christopher Thomas, started the company in 2017. The pandemic created numerous problems for the business, including major supply chain delays. To meet operating expenses, the Debtor obtained a $500,000.00 Economic Disaster Loan from the U.S Small Business Administration (the "SBA"). The Debtor also obtained extremely high interest rate loans, some of which required large ACH deductions from the Debtor's bank account on a weekly basis. When these payments

could no longer be sustained, Mr. Tanner concluded that the only way to save the business was to reorganize in Chapter 11.

## LIQUIDATION ANALYSIS

The Debtor leases its location and owns no real property. A liquidation analysis is attached hereto as "Exhibit 1." This analysis indicates that if this case were converted to one under Chapter 7, there would be a possible distribution to unsecured claims of $3,500.00.

The Debtor's Plan proposes to pay $54,000.00 to unsecured creditors with pro rata quarterly payments of $4,500.00 starting ninety days after the Effective Date of the Plan.

## PROJECTIONS AND FEASIBILITY

Mr. Tanner has projected income and operating expenses for the period from January through December, 2024. These projections are attached as "Exhibit 2."

The monthly payments required by the Plan are as follows:

| Class 2 | Priority Unsecured Claims | $0.00 |
|---------|---------------------------|-------|
| Class 3 | U.S. Small Business Administration | $1,004.45 |
| Class 4 | Ford Motor Credit Co. | $4,743.00 |
| Class 5 | HomeTowne Capital Management | $243.38 |
| Class 6 | Unsecured claims | $1,500.00[1] |
| Class 7 | Donald and Lisa Ann Schnapp<br>Billy Elixson | $427.00<br>$416.67 |
| Class 8 | Libertas Funding, LLC | $461.28 |
| Total | | **$8,795.78** |

---

[1] For administrative convenience, payments to unsecured claims will be paid on a quarterly basis in the amount of $4,500.00. $1,500.00 is the monthly payment.

2

Based on the Debtor's projections, there is a reasonable likelihood that the Debtor will be able to make its Plan payments without the need for further reorganization.

## DISPOSABLE INCOME

§1191(d)(2) of title 11 defines "disposable income" to be "income that is received by the debtor and that is not reasonably needed to be expended for the continuation, preservation, or operation of the business of the debtor." The $54,000.00 which the Plan provides to pay to unsecured claims represents all of the Debtor's projected disposable income for the three year period following the Effective Date of the Plan. This is supported by the Debtor's projections attached as "Exhibit 2." Mr. Tanner believes that income and operating expenses will remain relatively the same for all three years of the Plan.

## ARTICLE I - SUMMARY OF PLAN

This Plan submitted under §1190 of Subchapter V of Chapter 11 of the Bankruptcy Code proposes to pay creditors of Tanner Construction Group, LLC (the "Debtor") from future income. The **term** of the Plan is **thirty-six (36) months.** Certain payments will extend beyond the three year term.

This Plan provides for :        three classes of secured claims

two classes of non-priority unsecured claims (Class 6 & 7)

Allowed claims of non-priority unsecured creditors in Class 6 will receive distributions which the proponent of the Plan has valued at approximately 3.21 cents on the dollar. The Plan also provides for the payment of administrative claims.

All creditors should refer to Articles 3 through 4 of this Plan for information regarding the precise treatment of their claims. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.**

3

## ARTICLE II - CLASSIFICATION OF CLAIMS

1.1   Class 1 - Administrative claims - Costs and expenses of administration as defined in the Bankruptcy Code for which application for or allowance of the claim is filed prior to the Effective Date, as the same are allowed, approved and ordered paid by the Court.

1.2   Class 2 - Prepetition priority claims - Claims entitled to priority by §507(a) of the Bankruptcy Code, as the same are allowed, approved and ordered paid by the Court.

1.3   Classes 3, 4, 5, 8 - Secured creditors as their claims existed on the date of the petition in this case, as finally allowed and ordered paid by the Court, up to the extent that such claims are not greater than the value of the Debtor's assets, which the Court finds are valid security for such claims.

1.4   Class 6 - Claims of all unsecured creditors of the Debtor excluding the secured and/or priority portion of claims filed by creditors in classes 1 - 5, who timely file a proof of claim by the claims deadline of August 25, 2022, as the same are allowed and ordered paid by the Court.  This class also includes claims of unsecured creditors, whether or not a proof of claim is timely filed, but only to the extent that the Debtor listed a claim for such creditor in Schedule E/F and the claim was not listed as contingent, unliquidated, or disputed.  The amount of any claim as to which a proof of claim is not timely filed will be limited to the dollar amount scheduled by the Debtor.  This class also includes, but is not limited to, creditors whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court finds the same unsecured in whole or in part.

1.5   Class 7 – Claims of Donald Anthony Schnapp and Lisa Ann Moore-Schnapp and Billy Elixson.  These claims are unsecured and involve contractual disputes which the Debtor believes would require extensive litigation to liquidate the amounts owed.

## ARTICLE III - CLAIMS NOT IMPAIRED UNDER THE PLAN

2.1 <u>Class 1</u> - <u>Administrative Claims</u> –

(a)   <u>Professional Fees</u> – Prior to the filing of the petition, Debtor's attorneys received a $20,000.00 prepetition retainer, in addition to the filing fee of $1,738.00. On the date of the petition, $9,680.00 of the retainer remained in trust. The Court previously entered an order approving an Interim Fee Application of $19,860.00, with a 25% holdback. The Debtor paid the authorized amount. The attorney estimates that the total amount owed will be, including the 25% holdback, will be $8,500.00. The attorney will file a final fee application. To the extent these fees are allowed and ordered paid by the Court, the Debtor will pay this claim by the Effective Date of the Plan.

The Debtor also obtained an order authorizing it to employ attorney Michael DeLoach for assistance with a pending state court claim regarding a construction contract dispute. Mr. DeLoach will file a fee application for the total amount owed as of confirmation. To the extent these fees are allowed and ordered paid by the Court, the Debtor will pay this claim no later than the Effective Date of the Plan.

(b)   <u>Subchapter V Trustee Fees</u> - The Trustee has not yet filed a fee application. To the extent these fees are allowed and ordered paid by the Court, these professional fees will be paid in full by the Effective Date of the Plan. As of this date, the Debtor has forwarded $2,100.00 to the Trustee and will pay more prior to confirmation. Any professional fees incurred by the subchapter V Trustee following confirmation of the Plan will be paid in due course as fee applications are filed and approved by the Court.

(c)   <u>Miscellaneous</u>. Other than professional fees, the Debtor does not anticipate owing any post-petition debts on the Effective Date of the Plan. If there are any post-petition debts in existence at the time of confirmation, the Debtor will pay such debts according to invoice terms by the Effective Date of the Plan.

2.2 <u>Class 2</u> – <u>Priority claims.</u> - There are no unsecured priority claims.

## ARTICLE IV - IMPAIRED CLAIMS

3.1 <u>Class 3</u> – <u>U.S. Small Business Administration (the "SBA")</u> – This creditor filed secured claim 16 in the amount of $544,178.08. This claim is secured by a lien on all of the Debtor's assets, with the exception of titled vehicles and a dump trailer which is secured by a purchase money lien. The Debtor believes the value of the collateral is no more than $200,000.00. The allowed secured claim will be amortized over three hundred and twelve (312) months with 3.75% interest. Using this interest rate and term, the monthly payment will be $1,004.45. The first payment will be due thirty days following the Effective Date of the Plan. There will be a ten day grace period as to each payment. This creditor will retain its lien on its collateral until its secured claim is paid in full. The balance of this claim will be treated as an unsecured claim and will be paid pro rata along with all other unsecured general claims in Class 6.

3.2 <u>Class 4</u> – <u>Ford Motor Credit Co.</u> – This creditor filed secured claims 3 through 11. These claims total $248,595.01 and are fully secured. The Debtor entered into a Stipulation for Adequate Protection (Doc. 83, the "AP Stipulation") with Ford and is making monthly adequate protection payments of $4.743.00[2]. The AP Stipulation provides for payments for each claim. All nine claims are included in this Class. Following confirmation, these payments will continue as provided for in the AP Stipulation, the terms of which are incorporated herein. This creditor will retain its lien on its collateral until its secured claims are paid in full.

3.3 <u>Class 5</u> – <u>HomeTowne Capital Management</u> – This creditor holds a claim in the amount of $12,000.00 secured by a lien on a 7' x 16' dump trailer. The Debtor believes the value of the trailer is $8,000.00 and will file a motion to value. The allowed

---

[2] This is the total amount of all payments on the nine vehicles.

secured claim will be amortized over thirty-six (36) months with 6% interest for monthly payments of $243.38. The first payment will be due thirty days following the Effective Date of the Plan. There will be a ten day grace period as to each payment. This creditor will retain its lien on its collateral until its secured claim is paid in full. The balance of this claim will be treated as an unsecured claim and will be paid pro rata along with all other unsecured general claims in Class 6.

3.4 <u>Class 6</u> - <u>Unsecured Creditors</u> - The Debtor's total unsecured debt is approximately $1,679,422.00. A list of the claims which comprise this total, including the creditor's name and amount owed, is attached hereto as "Exhibit 3." This amount includes estimated deficiencies for partially secured creditors. This list is an estimate and the total amount may be reduced. A final list will be attached to any order confirming the Plan.

The Debtor will pay a total of $54,000.00, with no interest, to all timely filed, allowed unsecured claims on a pro rata basis over thirty-six (36) months. For administrative convenience, this amount will be paid quarterly, with payments of $4,500.00 each, starting on the first day of the month which is three months following the Effective Date of the Plan. There will be a ten day grace period as to each such payment.

3.5 <u>Class 7</u> – <u>Donald Anthony Schnapp and Lisa Ann Moore-Schnapp and Billy Elixson</u> – Both the Schnapps and Mr. Elixson hold claims related to construction contracts. Significant expense would be incurred in litigating these claims and the outcome of litigation is always uncertain. For these reasons, the Debtor believes that it is in the best interest of the bankruptcy estate to provide for an additional payment to these creditors. The Debtor has filed a motion to compromise and settle the claim held by the Schnapps and the Debtor will file a similar motion as to the claim of Billy Elixson.

7

(a) Donald Anthony Schnapp and Lisa Ann Moore-Schnapp filed unsecured claim no. 24 in the amount of $165,249.00 (the "Claim").  Of this amount, $139,642.00 will be treated along with all other unsecured claims in Class 6, above.  The balance of the claim, $25,607.00, will be paid to the Schnapps over a period of sixty months with no interest, in sixty equal monthly installments of $427.00.

(b) Billy Elixson claims to be owed $61,260.00.  Of this amount, $36,260.00 will be treated along with all other unsecured claims in Class 6, above.  The balance of the claim, $25,000.00, will be paid to the Billy Elixson over a period of sixty months with no interest, in sixty equal monthly installments of $427.00.

The first payment to each of the above creditors will be due thirty days following the Effective Date of the Plan.  There will be a ten day grace period as to each such payment.

3.6 Class 8 – Libertas Funding, LLC – This creditor filed secured claim no. 25 in the amount of $484,261.60 (the "Claim").  The value of this secured claim is $20,000.00.  The Debtor will pay $20,000.00, with 5% interest, over a period of 48 months with monthly payments of $461.28.  The first payment will be due thirty days following the Effective Date of the Plan.  There will be a ten day grace period as to each such payment.  The balance of this claim in the amount of $464,261.00 will be treated as an unsecured claim and will be paid pro rata along with all other unsecured general claims in Class 6.  This creditor will retain its lien on its collateral until its secured claim is paid in full.

## ARTICLE V - EXECUTORY CONTRACTS

1.  The Debtor leases its commercial business premises in Alachua from Jeffrey and Patricia Moser.  Monthly payments are $2,463.63 and the lease expires in April, 2024.  This contract will be assumed as of the Effective Date of the Plan.

2.  The Debtor has an employee leasing contract with FrankCrum.  This contract will be assumed as of the Effective Date of the Plan.

3.  The Debtor has an oral agreement with Haskins Demolition, LLC pursuant to which the Debtor makes the monthly loan payments to John Deere on a John Deere G50 excavator which was purchased by Haskins.  When the loan is paid, the excavator will be titled in the Debtor's name.

4.  The Debtor was a party to approximately 112 construction contracts as of the date of the petition.  The Debtor assumes these contracts.

## ARTICLE VI - MEANS FOR EXECUTION OF THE PLAN

### A.  Remedies

1.  **Payments**.  The Debtor intends to make Plan payments from future income.  Should the Debtor be unable to make the required payments from future income, the Debtor will take appropriate action to fund the required amount.  This could include a proposed modification of the confirmed plan or liquidation of assets.

2.  **Default**.  The Debtor will be in "Default" as to a creditor if: a) the Debtor fails to timely make any Plan payment to such creditor as provided for in the Plan and b) fails to make the missed payment(s) within thirty (30) days after a Notice of Default is provided to the undersigned attorney for the Debtor.  If the missed payment(s) is not cured as provided above, the creditor shall have the right to pursue any available remedies it may have.

9

**B. Continued Corporate Existence**

The Debtor shall continue to exist as the Reorganized Debtor, doing business under the name Tanner Construction Group, LLC. Christopher Tanner shall remain the sole managing member of the Reorganized Debtor.

**C. Services of Subchapter V Trustee**

1. **Consensual Plan.** If the Court confirms a consensual plan under §1191(a), the subchapter V trustee's services will terminate upon Substantial Consummation.

2. **Non-Consensual Plan.** If the Court confirms a non-consensual plan under the cramdown provisions of §1191(b), the trustee's services shall not terminate until all payments pursuant to the Plan which are to be made during the term of the Plan and §1194 are made. The Debtor will distribute all payments that are required during the term of the Plan, unless otherwise ordered by the Court.

3. **Dismissal or Conversion.** Termination of the service of the Subchapter V Trustee shall occur upon dismissal of the case or conversion of the case to another chapter.

**D. Retention of Rights and Powers** The Reorganized Debtor expressly reserves all rights and powers that the Debtor may enjoy as the Debtor-In-Possession to be utilized after confirmation, including, but not limited to, objections to claims and adversary proceedings.

**E. Effect of Confirmation**

1. Pursuant to 11 U.S.C. §1141, all of the provisions of this Plan, if confirmed by the Bankruptcy Court, will bind all creditors of the Debtor, for all purposes, including classification of a claim as secured or unsecured, whether or not the claim or interest of such creditor is impaired under this Plan and whether or not such creditor has accepted this Plan.

10

2.  Confirmation of this Plan shall vest all of the property of the estate in the Debtor.

3.  Except as otherwise provided in this Plan or in the order confirming this Plan, after confirmation of this Plan, the property described in this Plan shall be free and clear of all claims and interests of creditors, whether such claims are in the nature of consensual liens or involuntary liens, including judgment liens.

## ARTICLE VII - DISCHARGE

**A.  Consensual Plan**   If the Debtor's Plan is confirmed under §1191(a), the Debtor shall receive a discharge upon substantial consummation of the Plan.

**B.  Non-Consensual Plan**   If the Debtor's Plan is confirmed under §1191(b), confirmation of the Plan does not discharge any debt provided for in the Plan until the Debtor completes all payments due within the first three years of the Plan, or such longer period, not to exceed five years, as the Court may fix.   As soon as practicable after the Debtor completes the required number of payments, the Court shall grant the Debtor a discharge of all debts provided for in §1141(d)(1)(A), and all other debts allowed under section 503 and provided for in the Plan. The Debtor will not be discharged from any debt:

1.  as to which the last payment is due after the first three years of the Plan or as otherwise provided in §1192; or

2.  excepted from discharge under section 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**ARTICLE VIII - PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS**

**A. Objection Deadline**

All claims and causes of action in favor of the Debtor, including the authority to object to proofs of claim and to file adversary proceedings, are hereby reserved and retained to be prosecuted before and after confirmation. Unless extended by the Bankruptcy Court, the Debtor and the Reorganized Debtor will have ninety days from the Effective Date of the Plan by which to file such objections and/or adversary proceedings. The Debtor is currently a party to a state court lawsuit pending in the Circuit Court of the Eighth Judicial Circuit in Alachua County filed by Donald Anthony Schnapp and Lisa Ann Moore-Schnapp. If the parties cannot informally agree to a claim amount, the parties will either arbitrate or mediate the matter.

**B. No Distribution Prior to Allowance of Claims**

No payments or distributions shall be made with respect to any disputed claim or interest unless and until all objections to such claim or interest are resolved and such claim becomes an allowed claim or interest.

**ARTICLE IX - GENERAL PROVISIONS**

6.1 - Definitions

1. "Debtor" shall mean Tanner Construction Group, LLC.

2. "Creditors" shall mean all creditors of the Debtor holding claims for any debts, liabilities, demands or claims of any character whatsoever.

3. "Secured Creditors" shall mean all creditors who hold a lien, security interest, or other encumbrance which has been properly perfected as required by law with respect to property owned by the Debtor.

4. "Plan" shall mean this Plan of Reorganization in its present form or as it may be amended, supplemented or modified.

12

5.  "Court" shall mean the United States Bankruptcy Court for the Northern District of Florida, Gainesville division, including the United States Bankruptcy Judge presiding in the subchapter V chapter 11 case of the Debtor.

6.  "Claim" shall mean a duly scheduled or timely filed claim which is allowed and ordered paid by the Court.

7.  "Effective Date," also referred to as the "Effective Date of the Plan," shall be the first business day of the month following the date that is 14 days after the entry of the confirmation order.

8.  "Secured claim" shall mean the claim of a creditor secured by a lien on property in which the estate has an interest equal to either the value of such creditor's interest in the estate's interest in such property, or the total payoff owed to such creditor as of the effective date of the plan, whichever is smaller.

6.2 – Notices

Any Notice required to be provided to the Debtor or to the Debtor's attorney shall be furnished by first class mail to the following:

Debtor:  Tanner Construction Group, LLC., attn: Christopher Tanner, 16407 NW 174th Dr., Ste. D, Alachua, Florida, 32615.

Attorney for Debtor:  Ruff & Cohen, P.A., Lisa C. Cohen, 4010 Newberry Rd, Ste G, Gainesville, FL 32607  Should the address of the Debtor or the address of the Debtor's attorney change prior to completion of the plan payments, the Debtor will file a Notice of Change of address which will be served on all creditors.

6.4 – Severability  If any provision in this Plan is determined to be unenforceable, such determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.5 – Binding Effect** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

**6.6 – Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.7 – Controlling Effect**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

Tanner Construction Group, LLC

Dated: November 3, 2023

By: Christopher Tanner, managing member

RUFF & COHEN, P.A.
4010 Newberry Road, Suite G
Gainesville, Florida 32607
Telephone No. (352) 376-3601
Facsimile No. (352) 378-1261
Attorneys for Debtor

By: /s/ Lisa C. Cohen    11/7/23
    Lisa C. Cohen
    FL Bar #558291
    lcohen@ruffcohen.com

14

**"Exhibit 1"**

**LIQUIDATION ANALYSIS**

**Assets and liens**

**Assets subject to liens as of June 16, 2023:**

1.  U.S. SBA

| | |
|---|---|
| (a) Security deposits | $4,840.00 |
| (b) Materials located at jobsites | $76,900.00 |
| (c) Power tools, office equipment and furniture | $15,200.00 |
| (d) Free and clear trailers | $26,800.00 |
| (e) Cash in bank accounts | $20,396.68 |
| (f) Accounts receivable | $0.00 |
| Total | $144,136.68 |
| Amount owed | $544,178.08 |
| No equity | ($400,041.40) |

2.  Ford Motor Credit

| | |
|---|---|
| Vehicles | $264,848.00 |
| Amount owed | $248,595.01 |
| Equity | **$16,252.99** |

3. Miscellaneous items

| | |
|---|---|
| 7' x 16' dump trailer under lien | $8,000.00 |
| HomeTowne Capital Mgt. owed | $12,000.00 |
| No equity | $0.00 |
| | |
| Equitable interest in 2015 Chevy Silverado | $10,661.00 |
| FCU owed | $5,842.00 |
| Equity | **$4,819.00** |
| | |
| Equitable interest in 2021 Chevy Tahoe | $61,000.00 |
| Ally Financial owed | $52,000.00 |
| Equity | **$9,000.00** |
| | |
| Equitable interest in JD G50 Excavator | $26,000.00 |
| John Deere Credit owed | $26,000.00 |
| No Equity | $0.00 |

**Free and clear assets**

| | |
|---|---|
| Vehicles | $21,500.00 |

## Part II - Chapter 7 Analysis

These values and claim amounts suggest $51,581.99 in potential equity. However, if the Debtor was to convert to Chapter 7, a significant amount of that equity would likely not be realized.

Ford Motor Credit has liens on nine different vehicles. Dividing the $16,252.99 of "face value" equity over these nine vehicles results in an average equity of $1,805.00 per truck. With marginal equity in each vehicle, a Chapter 7 trustee would likely surrender these vehicle to Ford Motor Credit rather than incur the time and expense of selling them.

There are two other vehicles which present a similar situation. There is a 2015 Chevrolet Silverado which is titled in Mr. Tanner's name but as to which the Debtor has made all payments to the creditor, Florida Credit Union. The face value of the equity in this truck is $4,819.00. It is questionable whether a Chapter 7 trustee would attempt to liquidate this vehicle given the potential title issue and the lien.

The other vehicle is a 2021 Chevrolet Tahoe which is titled in Mrs. Tanner's name, but as to which the Debtor has made most of the payments to the creditor Ally Financial. The face value of the equity in this vehicle is $9,000.00. Once again, it is doubtful that a Chapter 7 trustee would attempt to liquidate this vehicle given the potential title issue and the lien.

At the time of confirmation there may be some accounts receivable. However, the SBA has a lien on receivables. There would be no equity in receivables that would be available for unsecured claims in a Chapter 7.

The list of scheduled assets included $76,900.00 of materials located at jobsites. This amount fluctuates constantly. The SBA has a lien on all such assets and there would be no equity in such materials.

The only assets which are free and clear are several vehicles valued at $21,500.00.

The Debtor estimates that in a Chapter 7, Chapter 11 administrative claims, including Debtor's attorney's fees and subchapter V fees would be $10,000.00. The Chapter 7 Trustee's commission on $21,500.00 would be $2,900.00. Other Chapter 7 administrative expenses, including accountant's fees, trustee's attorney's fees and costs of sale, are estimated at $5,000.00. Assuming a total of $18,000.00 of Chapter 7 and Chapter 11 administrative costs and commission, there would be approximately $3,500.00 for payment to unsecured claims.

## Tanner Construction Group

| | Jan-24 | Feb-23 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue:** | 350,830 | 350,830 | 350,830 | 350,830 | 350,830 | 350,830 | 350,830 | 350,830 | 350,830 | 350,830 | 350,830 | 350,830 |
| **Expenses:** | | | | | | | | | | | | |
| FrankCrum Payroll $118,000 monthly | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 |
| Office Rent | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 | 2,463.53 |
| Office Maintenance | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Office Supplies | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| House Rental for Down South Jobs | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| Liability Insurance | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| Fuel | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Electrical License | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Windstream – Internet / Phone System | 670 | 670 | 670 | 670 | 670 | 670 | 670 | 670 | 670 | 670 | 670 | 670 |
| Ice Machine Rental | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 |
| Water Equipment Rental | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 |
| Houzz Advertising | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Angi's Advertising | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 |
| ADT Security | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Farm Bureau – Auto Insurance – Business and Personal | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Adobe Subscription | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |
| Microsoft Subscription | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Springhill Storage Rental | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Portable Toilets for Jobsites | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 |
| Dumpsters for Jobsites | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Pest Control for Office | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| Office Cleaning | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 |
| Megaphone (Website Maintenance) | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Verizon (Chris Phone Bill) | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 |
| Materials for Jobsites | 108,065 | 108,065 | 108,065 | 108,065 | 108,065 | 108,065 | 108,065 | 108,065 | 108,065 | 108,065 | 108,065 | 108,065 |
| Subcontractors | 80,833 | 80,833 | 80,833 | 80,833 | 80,833 | 80,833 | 80,833 | 80,833 | 80,833 | 80,833 | 80,833 | 80,833 |
| Tractor Equipment Rental | 980 | 980 | 980 | 980 | 980 | 980 | 980 | 980 | 980 | 980 | 980 | 980 |
| Truck Maintenance | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Total Expenses:** | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 | 342,916.53 |
| **Net Profit Projected** | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 | 7,913.47 |

"Exhibit 2"

"Exhibit 3"

Unsecured Creditors to be paid in Class 6

| Creditor and source of claim | Claim Amount |
|---|---|
| 1. CFG Merchant Solutions (claim # 1) | $162,771.25 |
| 2. Swift Financial LLC (claim #2) | $85,000.80 |
| 3. Florida Express Environment (claim #12) | $1,669.55 |
| 4. AAA Express Services, LLC (claim #13) | $3,916.29 |
| 5. Tight-Seal, Inc. (claim #14) | $21,076.45 |
| 6. U.S. Small Business Administration (claim #16) | $344,178.08 |
| 7. American Express National Bank (claim #17) | $69,932.87 |
| 8. Andres Candelaria (claim #18) | $28,810.00 |
| 9. Verizon Connect (claim #17) | $3,879.69 |
| 10. Waste Pro (claim #21) | $942.79 |
| 11. KMS Media Solutions (claim #22) | $11,700.00 |
| 12. Michael Finnell (claim #23) | $84,540.00 |
| 13. Donald and Lisa Schnapp (claim #24) | $139,249.00 |
| 14. Libertas Funding, LLC (claim #25) | $464,261.60 |
| 15. 352 Electric LLC (Sch E/F) | $1,900.00 |
| 16. Accousti Engineering Co of Fla (Sch E/F) | $5,182.00 |
| 17. Air Ducks, Inc. (Sch E/F) | $390.00 |
| 18. Alachua Pest Services (Sch E/F) | $400.00 |
| 19. Anderson Advertising Ent., LLC (Sch E/F) | $1,950.00 |
| 20. B&M Equipment Rental (Sch E/F) | $326.22 |
| 21. Beacon Building Products (Sch E/F) | $18,845.66. |
| 22. Billy Elixson | $61,260.00 |
| 23. Davis Brothers Alachua Plumbing (Sch E/F) | $1,500.00 |
| 24. Donnelly Architecture, Inc. (Sch E/F) | $48,000.00 |
| 25. Elite Pro Builders, Inc. (Sch E/F) | $6,000.00 |
| 26. ELS Abatement & Construction (Sch E/F) | $2,900.00 |
| 27. FD Tile & Flooring Supply (Sch E/F) | $17,561.44 |
| 28. First Choice Plumbing, Inc. (Sch E/F) | $10,794.00 |
| 29. Floor & Décor Outlets of America (Sch E/F) | $7,915.03 |
| 30. Gainesville Regional Utilities (Sch E/F) | $1,625.80 |
| 31. Geo-Tech, Inc. (Sch E/F) | $2,440.00 |
| 32. Horizon Realty (Sch E/F) | $1,323.04 |
| 33. James Haskins (Sch E/F) | $48,000.00 |
| 34. Mauldins Gas Svcs., LLC. (Sch E/F) | $980.00 |
| 35. Patriot Containers (Sch E/F) | $1,000.00 |
| 36. Personnel Concepts (Sch E/F) | $2,218.06 |
| 37. PNC Bank, N.A. (Sch E/F) | $10,794.00 |
| 38. Ring Power Corp. (Sch E/F) | $1,480.51 |
| 39. SafeHome Air Solutions (Sch E/F) | $650.00 |
| 40. Sunbelt Rentals, Inc. (Sch E/F) | $13,605.08 |
| 41. Turner Pest Control (Sch E/F) | $704.60 |

42. United Rent-All (Sch E/F) ............................................ $2,471.67
43. Wex Bank (Sch E/F) .................................................... $6,286.00
44. HomeTowne Capital Management, LLC (Sch D) ........ $4,000.00


Total ........................................................................ $1,679,422.00

"Exhibit 1"
<u>Summary of Plan Payments</u>

Payments to Secured Claims are monthly. Payments to unsecured claims are quarterly.
The Effective Date of the Plan is 14 days after the date of the entry of the Order
Confirming Plan.

| <u>Class</u> | <u>Creditor</u> | <u>Interest Rate</u> | <u>Allowed Claim</u> | <u>Payment and Term</u> |
|---|---|---|---|---|
| 1 | Admin. Claim of Lukas and Lara Pidgeon | 0% | $9,000.00 | $4,500.00 payment on February 1; $4,500.00 payment March 1. |
| 2 | Priority claims - None | | | |
| 3 | U.S. Small Business Administration | 3.75% | $200,000.00 secured portion | 312 monthly payments of $1,044.45 starting 30 days after Effective Date |
| 4 | Ford Motor Credit Co. | Varying rates | 9 secured claims totaling $248,595.01 | AP monthly payments of $4,743.00 will continue until claims are paid in full; terms of AP Stipulation and Order (Doc. 103) are incorporated into confirmed Plan |
| 5 | None | | | |
| 6 | Unsecured claims | 0% | $1,661,387.05; $54,000 to be paid pro rata among allowed claims per attached list | Total of $54,000.00 paid pro rata over three years with 12 quarterly payments of $4,500.00; payments start June 1, 2024. |
| 7 | Claim of Donald Schnapps and Lisa-Ann Schnapps and claim of Billy Elixson | 0% | Schnapps: $25,607.00; Elixson: $25,000.00 | Both claims will be paid over 60 months with no interest starting 30 days after Effective Date. Schnapps payment is $427.00 per month and Elixson payment is $416.67 per month. |

| 8 | Libertas Funding, LLC Secured claim | 5% | $20,000.00 | 48 monthly payments of $461.28 starting 30 days after Effective Date |
|---|---|---|---|---|

**Unsecured Creditors to be paid $54,000.00 in Class 6**

**Unsecured claims will receive quarterly payments beginning on June 1, 2024**

| Line number | Creditor and source of claim | Claim Amount | Percentage of total claims | Total to be paid this creditor | Payment per quarter for 12 quarters |
|---|---|---|---|---|---|
| 1 | CFG Merchant Solutions (claim # 1) | $162,771.25 | 9.80% | $5,290.38 | $440.87 |
| 2 | Swift Financial LLC (claim #2) | $85,000.80 | 5.12% | $2,762.64 | $230.22 |
| 3 | Florida Express Environment (claim #12) | $1,669.55 | 0.10% | $54.00 | $4.50 |
| 4 | AAA Express Services, LLC (claim #13) | $3,916.29 | 0.24% | $127.44 | $10.62 |
| 5 | Tight-Seal, Inc. (claim #14) | $21,076.45 | 1.27% | $685.26 | $57.11 |
| 6 | U.S. Small Business Administration (claim #16) | $344,178.08 | 20.72% | $11,186.64 | $932.22 |
| 7 | American Express National Bank (claim #17) | $69,932.87 | 4.21% | $2,272.86 | $189.41 |
| 8 | Andres Candelaria (claim #18) | $28,810.00 | 1.73% | $936.36 | $78.03 |
| 9 | Verizon Connect (claim #17) | $3,879.69 | 0.23% | $126.36 | $10.53 |
| 10 | Waste Pro (claim #21) | $942.79 | 0.06% | $30.78 | $2.57 |
| 11 | KMS Media Solutions (claim #22) | $11,700.00 | 0.70% | $380.16 | $31.68 |
| 12 | Michael Finnell (claim #23) | $84,540.00 | 5.09% | $2,748.06 | $229.01 |
| 13 | Donald and Lisa Schnapp (claim #24) | $139,249.00 | 8.38% | $4,525.74 | $377.15 |
| 14 | Libertas Funding, LLC (claim #25) | $464,261.60 | 27.94% | $15,089.76 | $1,257.48 |
| 15 | 352 Electric LLC (Sch E/F) | $5,417.01 | 0.33% | $176.04 | $14.67 |
| 16 | Accousti Engineering Co of Fla (Sch E/F) | $5,182.00 | 0.31% | $168.48 | $14.04 |
| 17 | Air Ducks, Inc. (Sch E/F) | $390.00 | 0.02% | $12.42 | $1.04 |
| 18 | Alachua Pest Services (Sch E/F) | $400.00 | 0.02% | $12.96 | $1.08 |
| 19 | Anderson Advertising Ent., LLC (Sch E/F) | $1,950.00 | 0.12% | $63.18 | $5.27 |
| 20 | B&M Equipment Rental (Sch E/F) | $326.22 | 0.02% | $10.80 | $0.90 |
| 21 | Beacon Building Products (Sch E/F) | $18,845.66 | 1.13% | $612.36 | $51.03 |
| 22 | Billy Elixson (claim #27-2) | $36,260.00 | 2.18% | $1,178.82 | $98.24 |
| 23 | Davis Brothers Alachua Plumbing (Sch E/F) | $1,500.00 | 0.09% | $48.60 | $4.05 |
| 24 | Donnelly Architecture, Inc. (Sch E/F) | $48,000.00 | 2.89% | $1,560.06 | $130.01 |
| 25 | Elite Pro Builders, Inc. (Sch E/F) | $6,000.00 | 0.36% | $194.94 | $16.25 |
| 26 | ELS Abatement & Construction (Sch E/F) | $2,900.00 | 0.18% | $94.50 | $7.88 |
| 27 | First Choice Plumbing, Inc. (Sch E/F) | $10,794.00 | 0.65% | $351.00 | $29.25 |
| 28 | Floor & Décor Outlets of America (Sch E/F) | $7,915.03 | 0.48% | $257.04 | $21.42 |
| 29 | Gainesville Regional Utilities (Sch E/F) | $1,625.80 | 0.10% | $52.92 | $4.41 |
| 30 | Geo-Tech, Inc. (Sch E/F) | $2,440.00 | 0.15% | $79.38 | $6.62 |
| 31 | Horizon Realty (Sch E/F) | $1,323.04 | 0.08% | $43.20 | $3.60 |
| 32 | James Haskins (Sch E/F) | $48,000.00 | 2.89% | $1,560.06 | $130.01 |
| 33 | Mauldins Gas Svcs., LLC. (Sch E/F) | $980.00 | 0.06% | $31.86 | $2.66 |
| 34 | Patriot Containers (Sch E/F) | $1,000.00 | 0.06% | $32.40 | $2.70 |
| 35 | Personnel Concepts (Sch E/F) | $2,218.06 | 0.13% | $72.36 | $6.03 |
| 36 | PNC Bank, N.A. (Sch E/F) | $10,794.00 | 0.65% | $351.00 | $29.25 |
| 37 | Ring Power Corp. (Sch E/F) | $1,480.51 | 0.09% | $48.06 | $4.01 |
| 38 | SafeHome Air Solutions (Sch E/F) | $650.00 | 0.04% | $21.06 | $1.76 |
| 39 | Sunbelt Rentals, Inc. (Sch E/F) | $13,605.08 | 0.82% | $442.26 | $36.86 |
| 40 | Turner Pest Control (Sch E/F) | $704.60 | 0.04% | $22.68 | $1.89 |
| 41 | United Rent-All (Sch E/F) | $2,471.67 | 0.15% | $80.46 | $6.71 |
| 42 | Wex Bank (Sch E/F) | $6,286.00 | 0.38% | $204.12 | $17.01 |
| | **Totals** | **$1,661,387.05** | **100.00%** | **$53,999.46** | **$4,499.96** |